452 A.2d 1337

**HOPEWELL TOWNSHIP BOARD OF SUPERVISORS and Hopewell Township Zoning Hearing Board, Appellants,**

v.

**Edward B. GOLLA and Elizabeth M. Golla, his wife, et al., Appellees.**

Supreme Court of Pennsylvania.

Argued May 17, 1982.

Decided Nov. 5, 1982.

Reargument Denied Dec. 22, 1982.

248

Gilbert G. Malone, John W. Thompson, William Poole, York, for appellants.

Edward B. Golla, pro se.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Commonwealth Court which affirmed[1] an order of the Court of Common Pleas of the Nineteenth Judicial District holding certain agricultural preservation provisions of the Hopewell Township zoning ordinance to be invalid. The provisions in question establish the appellant Township's approach to achieving preservation of prime agricultural land through use of zoning power to limit the conversion of prime agricultural property to other uses.

The challenged provisions of the zoning ordinance provide, in pertinent part:

§ 203.2 Uses Permitted: No building or structure may be erected or used and no land may be used or occupied except for the following principal uses:

1. *One-family dwelling on an approved lot in a minor residential land development* or on an individual lot the dimensions of which have not changed since June 5, 1974.

. . . .

§ 203.9 Regulations Involving Lots in a Minor Residential Land Development

a) *Lots to be separated from the original tract shall not contain more than one and one-half (1½) acres for each dwelling unit assigned to the tract being separated* unless it is determined that the lot is not suitable for agricultural use.

. . . . .

e) Nothing contained in this section shall be interpreted to prevent a bona fide "farm" from adding adjacent ground to that farm.

(Emphasis added.) A "minor residential land development", for purposes of these sections, is defined in the ordinance as

1. Commonwealth Court modified the lower court's order so as to allow single-family dwellings as a permitted use in the agricultural zone of Hopewell Township. *Hopewell Township Board of Supervisors v. Golla,* 58 Pa.Commw.Ct. 572, 428 A.2d 701 (1981).

"a residential land development consisting of five or fewer existing or proposed dwelling units." The definition of "residential land development" includes the limitation that "[i]n determining the number of lots in a residential land development all lots which on June 5, 1974 were a part of the same parcel shall be included." In essence, the ordinance permits an owner of a tract of land in the agricultural zone of Hopewell Township either to use the undivided tract as a farm having not more than one single-family dwelling or to establish as many as five contiguous residential lots each containing a single-family dwelling and having a maximum size of 1½ acres.[2] The restrictions are not applicable to land that is "not suitable for agricultural use," such unsuitability to be determined by the presence of factors enumerated in the ordinance such as certain topographies or soil types. Hence, severence of lots larger than 1½ acres may be had if the land to be severed is not suitable for agricultural use or if the land is severed for the purpose of transferring it to an adjacent farmer.

The appellees, Edward and Elizabeth Golla, owners of a 140 acre farm in Hopewell Township, sought to partition their farm into seven, and possibly as many as fourteen, parcels, each of which would comprise ten or more acres. It is proposed that each of these parcels would be used for agricultural purposes, and that each may be the site of a single-family dwelling. It is stipulated that should they attempt the proposed plan, the Township would prosecute the appellees for a violation of the Township zoning ordinance. Thus, being prevented from dividing their property as desired, appellees challenge the applicability of the ordinance to their proposal, and, in the alternative, the constitutionality of the ordinance.

I.

■ Appellees contend that the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, art. I, § 101, 53 P.S.

2. Whether the ordinance is to be construed as permitting a sixth dwelling, located on the remaining agricultural parcel, is not presently in issue.

§ 10101 et seq. (1972) (hereinafter MPC) expressly exempts tracts of agricultural land, containing ten or more acres, from zoning requirements. We disagree. Article V of the MPC grants municipalities the power to "regulate subdivisions and land developments..." 53 P.S. § 10501. In defining the term "subdivision" for purposes of the MPC, however, Article I states that "the division of land for agricultural purposes into parcels of more than ten acres, not involving any new street or easement of access, shall be exempted." 53 P.S. § 10107(21). The fact that such parcels of land are exempted from the definition of the "subdivisions" that may be regulated pursuant to Article V, however, does not infer that such parcels are to be exempted from the separate and distinct general power conferred by Article VI of the MPC, 53 P.S. § 10601, enabling municipalities to enact zoning regulations.

Sections 203.2 and 203.9 of the ordinance in question do not represent exercises of the power to regulate subdivisions but constitute, instead, applications of the zoning power. The distinction between regulations falling within the ambit of Article V, subdivision controls, and those within the purview of Article VI, zoning, lies in the nature of that which is sought to be regulated. Article V contemplates regulations governing the *process* of land development commencing with requirements for obtaining approval of subdivision plats. Subdivisions of land, for agricultural purposes, into parcels of ten or more acres were exempted from the scope of municipal regulatory authority under Article V in order to excuse such subdivisions from compliance with the requirement of filing, for approval, plats setting forth proposed subdivisions. As derived from that Article, the purpose for the requirement of obtaining plat approval is to insure compliance with requirements set forth by the municipality in pursuit of planning goals.[3] In contrast, Article VI

**3.** Accordingly, the municipality may promulgate provisions requiring, *inter alia:* submission of plats; compliance with a comprehensive plan; that streets in and bordering a subdivision shall be coordinated and of adequate width and grades to accommodate traffic and facilitate fire protection; adequate easements for drainage and utili-

provides for regulation of the areas of land that may be applied to particular uses:

Zoning ordinances may permit, prohibit, regulate, restrict and determine:

(1) *Uses of land,* watercourses and other bodies of water;

(2) Size, height, bulk, location, erection, construction, repair, maintenance, alteration, razing, removal and use of structures;

(3) *Areas and dimensions of land* and bodies of water *to be occupied by uses* and structures, *as well as areas,* courts, yards, and other open spaces and distances *to be left unoccupied by uses* and structures.

(4) Density of population and intensity of use.

53 P.S. § 10603. (Emphasis added). The Hopewell Township ordinance restricting the conversion of agricultural tracts into residential lots exceeding one and one-half acres in size is plainly a regulation of the uses of land and the areas and dimensions of land to be occupied by those uses. To no extent is the ordinance merely a regulation of the *process* of subdividing land within the Township to assure that adequate improvements are planned to satisfy the needs of development. We reject, therefore, the contention of appellees that the ordinance in question is in fact merely a subdivision regulation, compliance with which the proposed ten acre plots would be exempted under the MPC.

## II.

■ Having established the applicability of the ordinance to the proposal of appellees, we turn now to the contention that the courts below erred in holding the zoning ordinance to be unconstitutional. Initially, it is to be noted that Section 1011 (1) of the MPC purports to set forth the scope

ties; that land which is subject to flooding, subsidence or underground fires either shall be made safe for the proposed use or that the land shall be set aside for uses which shall not endanger life or property; and compliance with standards for improvements such as walkways, curbs, street lights, fire hydrants, and water and sewage facilities. 53 P.S. § 10503.

of judicial review applicable to determinations of the validity of municipal zoning ordinances. That Section provides, in pertinent part:

### § 11011. Judicial relief

(1) In a zoning appeal the court shall have the power to declare any ordinance or map invalid and set aside or modify any action, decision or order of the governing body, agency or officer of the municipality brought up on appeal, *only if* it determines that:

(a) the municipality has not acted in good faith or made a bona fide attempt in the adoption of its ordinances or maps, or any amendments thereto, to meet the statutory and constitutional requirements for nonexclusionary zoning; or

(b) the *ordinance imposes limitations that are not reasonably related to the municipality's authority to determine* its physical growth pattern, protect the Commonwealth's public natural resources, coordinate development with the provision of public services, or protect the character of the community.

53 P.S. § 11011 (1) (Emphasis added). On appeal to Commonwealth Court from the decision of the Court of Common Pleas holding the zoning ordinance unconstitutional, Commonwealth Court held this legislative limitation of the scope of judicial review to be invalid as an unconstitutional transgression of the separation of powers. *See Marbury v. Madison,* 5 U.S. 137, 2 L.Ed. 60 (1803); *Leahey v. Farrell,* 362 Pa. 52, 56, 66 A.2d 577, 579 (1949). The essence of appellees' allegations as to the constitutional infirmity of the ordinance in question, however, could aptly be summarized as being that the zoning provisions, in the words of Section 1011(1)(b), are "not reasonably related to the municipality's authority" to enact land use restrictions promotive of the goals set forth in that Section. Since the reasons given by the Court of Common Pleas and by Commonwealth Court for invalidating the ordinance, i.e., that its provisions are arbitrary, unreasonable, and not substantially related to agricultural preservation, and that the provisions produce

"irrational results unrelated to lawful land use control purposes", respectively, are encompassed within the grounds set forth in Section 1011(1)(b) for invalidation of zoning ordinances, the limits on judicial review set forth in that Section do not, as applied to this case, constitute an unconstitutional restriction. Specifically, the reasonable relation to municipal authority required of an ordinance under Section 1011(1)(b) does not allow regulations to be sustained which are irrational, arbitrary, or *unreasonably restrictive*. The determinations of the courts below that the instant zoning ordinance lacks a substantial relation to the preservation of agricultural land, and that irrational results are incurred by application of the ordinance, are the equivalent of findings that the zoning provisions are not reasonably related to Hopewell Township's authority to determine its physical growth pattern in such a manner as to protect the agricultural character of that community. Thus, ordinances which too severely, or indiscriminately, restrict landowners' rights violate Section 1011(1)(b). Irrespective of the potential for Section 1011(1) to unconstitutionally transgress the separation of powers when applied to hypothetical allegations of an ordinance's invalidity not here presented, we believe the Commonwealth Court erred in presently holding the provision to be invalid.[4]

With regard to the constitutionality of the zoning ordinance itself, we note that the limits of the authority of municipalities to enact zoning regulations are well established. As stated in the opinion authored by Mr. Justice Nix in *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 188, 382 A.2d 105, 107–108 (1977),

Article I Section 1 of the Pennsylvania Constitution protects the citizen's right to the enjoyment of private property, and governmental interference with this right is circumscribed by the due process provisions of the Fifth and Fourteenth Amendments to the United States Consti-

4. In view of our determination that Section 1011(1) was erroneously held invalid by the Commonwealth Court, appellant's claim that the assertion of that Section's unconstitutionality was not timely raised below need not be addressed.

tution. U.S. Const. amends. V, XIV; Pa. Const. art. 1, § 1; *Girsh Appeal,* 437 Pa. 237, 241 n. 3, 263 A.2d 395, 397 n. 3 (1970). In reviewing zoning ordinances, this Court has stated that an ordinance must bear a substantial relationship to the health, safety, morals, or general welfare of the community. *National Land and Investment Co. v. Easttown Twp. Bd. of Adjustment,* 419 Pa. 504, 522, 215 A.2d 597, 607 (1965), *citing, inter alia, Glorioso Appeal,* 413 Pa. 194, 196 A.2d 668 (1964). Thus, without expressly labelling it as such, this Court has employed a substantive due process analysis in reviewing zoning schemes and has concluded implicitly that exclusionary or unduly restrictive zoning techniques do not have the requisite substantial relationship to the public welfare. See *Concord Township Appeal,* 439 Pa. 466, 268 A.2d 765 (1970); *Girsh Appeal,* supra.

The substantive due process inquiry, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power, must accord substantial deference to the preservation of rights of property owners, within constraints of the ancient maxim of our common law, *sic utere tuo ut alienum non laedas.* 9 Coke 59—So use your own property as not to injure your neighbors. A property owner is obliged to utilize his property in a manner that will not harm others in the use of their property, and zoning ordinances may validly protect the interests of neighboring property owners from harm. Mr. Justice Roberts, in *Appeal of Girsh,* 437 Pa. 237, 241 n. 3, 263 A.2d 395, 397 n. 3 (1970), set forth the guiding principle as follows:

We must *start with the basic proposition that absent more, an individual should be able to utilize his own land as he sees fit.* U.S. Const.Amends. V, XIV. Although zoning is, in general, a proper exercise of police power which can permissibly limit an individual's property rights, *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114 [, 71 L.Ed. 303] (1926), it goes without saying that the *use of the police power cannot be unreasonable.* E.g. *Eller v. Board of Adjustment,* 414 Pa. 1, 198 A.2d 863

(1964). If the zoning ordinance is unreasonable, it is no saving that some people may show the requisite degree of hardship to obtain a variance. The hardship necessary to sustain an application for a variance borders on economic disaster, but this provides no protection for the individual who is disadvantaged to a substantial, but lesser, extent. This infringement on this latter individual's right to use his own property cannot be allowed unless it is reasonable.

(Emphasis added). See also *Appeal of Kit-Mar Builders, Inc.*, 439 Pa. 466, 470 n. 1, 268 A.2d 765, 766 n. 1 (1970). Hence, the function of judicial review, when the validity of a zoning ordinance is challenged, is to engage in a meaningful inquiry into the reasonableness of the restriction on land use in light of the deprivation of landowner's freedom thereby incurred. A conclusion that an ordinance is valid necessitates a determination that the public purpose served thereby adequately outweighs the landowner's right to do as he sees fit with his property, so as to satisfy the requirements of due process. See *National Land and Investment Co. v. Easttown Township Board of Adjustment*, 419 Pa. 504, 525, 215 A.2d 597, 608 (1965) (balancing of interests approach to determination of zoning ordinance validity). As Mr. Chief Justice Bell stated, concurring in *Appeal of Kit-Mar Builders, Inc.*, 439 Pa. at 480–481, 268 A.2d at 771–772:

Many zoning cases ... fall into a twilight zone. For over a century it was the law of this Commonwealth that every person in the United States of America had a Constitutionally ordained right to own, possess, protect and use his property in any way he desired, so long as it did not injure or adversely affect the health or morals or safety of others. This was one of the two basic differences between America and Communism. Then along came "zoning" with its desirable and worthwhile objectives. The result was that all the aforesaid basic fundamental rights of an owner of property were restricted by a Judicially created higher right, namely, the general welfare of the people of that community. No one knows, and the Courts have been unable to define what is meant by

"general welfare." To some, it means the absolute, un-qualified, Constitutional right to liberty and property, subject to the above-mentioned restrictions. To some, it means what the Zoning Board or a Court believes is best for the community or township or county involved. To others, it means the right of our expanding population to live in any county or place in our Country they may desire. To still others, it means the right to have the Government purchase and set aside millions of acres of open land for the benefit of our Country. These rights are sometimes indefinite, sometimes overlapping, and sometimes conflict-ing.

. . . . .

*Although zoning almost always has a worthwhile objec-tive,* since it is a restriction on and a deprivation of a property owner's Constitutionally ordained rights of prop-erty, it can be sustained only if it is *clearly necessary* to protect the health or safety or morals or general welfare of the people. *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A.2d 408 [1964]; . . . ; *Eller v. Board of Adjust-ment,* 414 Pa. 1, 198 A.2d 863 [1964].

(Emphasis added). See also *Young Men & Women's Hebrew Ass'n v. Borough Council of Monroeville,* 429 Pa. 283, 288, 240 A.2d 469, 472 (1968) (clear necessity required to support regulation of property). In the instant case, no significant doubt may be entertained as to the worthwhile nature of the objective of Hopewell Township's effort to preserve agricul-tural land. The Zoning Hearing Board, and the courts below, were amply supported by evidence of record in con-cluding that the Township's agricultural lands are worthy of preservation, that the goal of preserving prime agricultural land is a sound one, consistent with national, regional, state, and local needs, and that zoning ordinances designed to achieve preservation of that land are appropriate subjects for municipal enactments. However, the restrictions on landowner rights imposed by the ordinance in question are too severe to be regarded as "clearly necessary" when their burdens are balanced against the public interest sought to be

protected; hence, they do not meet the standard constitutionally required of municipal zoning ordinances.

The zoning scheme of Hopewell Township unquestionably has *some* relationship to the goal of preserving farmland, merely by reason of the fact that tracts of such land are restricted in the extent to which they can be diverted to non-agricultural uses. The infirmity of the ordinance, therefore, arises not from a perception that its effect is unlikely to be promotive of agriculture; rather, the deficiency is the failure of the municipality to use less restrictive means of furthering the goal of agricultural preservation. By limiting residential subdivisions in the prime agricultural zone of the Township to a maximum of five 1½ acre plots *regardless* of the size of the original tract, an unreasonably severe limitation is placed upon permissible land uses. As applied to the 140 acre tract of appellees, the ordinance would permit creation of a 7½ acre residential development with a residual agricultural lot comprising 132½ acres. The need to preserve an agricultural tract as large as 132½ acres, and the detriment to agriculture to be incurred by allowance of further subdivisions, are not so clearly established as to necessitate the zoning restrictions imposed. With regard to the correlation between lot size and efficiency of land utilization, the Zoning Hearing Board made the following finding of fact: "Productivity of farms and efficiency of farming operations would be decreased by the division of productive farms into ten (10), twenty (20) or less than fifty (50) acre tracts . . . " Notwithstanding a relationship between tract size and efficiency of production, the public interest in preventing irretrievable loss of agricultural land does not presently warrant overriding appellees' interest in using the land in a less restricted manner, including their right to use property in less than the most efficient manner.

■ The method of preservation of large tracts of prime agricultural land employed by Hopewell Township suffers from an additional infirmity in that it has an arbitrary and discriminatory impact on different landowners. The tract size in existence on the effective date of the ordinance was

selected as a tract size to be preserved and which would be permitted to absorb subdivision to the extent of developing a "minor residential land development" comprising "five or fewer . . . dwelling units" without regard to the size of the tract so regulated. Such an arbitrary designation of tract size is argued to be consistent with the goal of maintaining tracts as large as possible with the auxiliary benefit being a likelihood that the tracts will continue to be used for agricultural purposes. However, an ordinance which does not bear alike on all persons living within the territory zoned, without a reasonable basis for the disparity of treatment, is discriminatory in application and cannot be justified under the police power. See *White's Appeal*, 287 Pa. 259, 268, 134 A. 409 (1926). Under the scheme of the Hopewell Township ordinance, the owner of a small tract of land may devote a greater percentage of his total acreage to single-family dwellings than the owner of a large tract. Landowners of smaller tracts, therefore, bear a lesser burden of regulation in that a lesser percentage of their tracts are irretrievably devoted to agricultural uses than the percentage of tracts so devoted of landowners of large tracts. The public interest in preservation of farmland is insufficient to justify such a great disparity of treatment between large and small landowners; thus, the disparate burdens lack a reasonable basis. This discriminatory effect results from the mere circumstance of tract size on the effective date of the ordinance and from the limit of five residential lots which may be established without regard to the overall size of the tract. Were the ordinance to permit the dedication of one 1½ acre lot to a single-family residence per each x number of acres in the tract, this scheme would have a more equitable effect and would avoid impacting landowners on an arbitrary basis. Hence, because of the discriminatory effect between different landowners, we conclude that the ordinance, by limiting development to an arbitrary number of dwelling units without regard to the size of the original tract, is invalid.

The Township challenges that portion of the Commonwealth Court order which severed only the limiting

language in Section 203.2(1), leaving intact the enumerated use of "one-family dwelling" standing alone without limitation.[5] The Township contends that Section 203.2(1) should not be severed in this fashion because the resulting permitted use, allowing unrestricted proliferation of one-family dwellings, would frustrate the fundamental goal of preserving prime agricultural land and instead urges us to strike the entire subsection (1). However, as stated by Judge Craig, writing for the Commonwealth Court:

> [T]otal invalidation of subsection 203.2(1) would result in an agricultural zone which, aside from pre-existing dwellings, would be an uninhabited district. The township's contention, contrary to the principles of severability, would not save the agricultural zone but would subject it to a new illegality, a freeze against any future habitation within it.

58 Pa.Commw.Ct. 572, 581 n. 6, 428 A.2d 701, 705 n. 6 (1981). Accordingly, it is unsuitable to sever the ordinance either as proposed by the Township or as ordered by the Commonwealth Court. Under these circumstances, when a reasonable result cannot be effected, severance is inappropriate. See Statutory Construction Act, Act of Dec. 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1925 (Supp.1982).

Section 1101(2) of the MPC provides that where, as here, an ordinance has been declared invalid, the reviewing court

> may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order.

53 P.S. § 11011(2) (Supp.1982). Hence, the appropriate remedy is to remand to the Court of Common Pleas for proceedings consistent with Section 1011(2).

---

**5.** Commonwealth Court severed only the bracketed portion of the following permitted use set forth in the ordinance, Section 203.2(1): "One-family dwelling [on an approved lot in a minor residential land development or on an individual lot the dimensions of which have not changed since June 5, 1974]."

Order affirmed in part, modified in part, and case remanded.

HUTCHINSON, J., files a concurring opinion in which NIX, J., joins.

LARSEN, J., files a concurring and dissenting opinion.

McDERMOTT, J., files a dissenting opinion.

HUTCHINSON, Justice, concurring.

Because sections 203.2 and 203.9 of the Hopewell Township Zoning Ordinance are not reasonably related to the legitimate government interest in preserving large areas of agricultural land, I concur in the result. Accordingly, we need not decide whether the ordinance violated 53 P.S. § 10107 which exempts from limitation "the division of land for agricultural purposes into parcels of ten acres, not involving any new street or easement;" or whether the limitation on the scope of judicial review imposed by 53 P.S. § 11011(b) is unconstitutional.

NIX, J., joins this concurring opinion.

LARSEN, Justice, concurring and dissenting.

I would affirm the Order of the Commonwealth Court.

McDERMOTT, Justice, dissenting.

I dissent.

The majority has determined to set its own standards for what is good in Hopewell Township, at least for the present.

The Court has faulted the zoning ordinance because: Notwithstanding a relationship between tract size and efficiency of production, the public interest in preventing irretrievable loss of agricultural land does not presently warrant overriding appellees' interest in using the land in a less restricted manner, including their right to use property in less than the most efficient manner.

at 1343. There is only so much prime agricultural land in Hopewell Township. Perhaps when the majority's paternal

interest recognizes that fact, the Court can represide and reallot the land even closer to its heart's desire.

Hopewell Township is clearly authorized to pass a zoning ordinance,[1] and did so after considerable study. The Township found that smaller limitations are not productive of the purpose. One may differ with that finding, but unless that finding is clearly and unmistakably unconstitutional it should prevail. All that the majority offers here is its opinion, in contrast to the authorized, studied and careful finding of the zoning board of Hopewell Township. Such is merely the substitution of the opinion of a "super board of adjustment." We have always eschewed that description of the use of our powers. *National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 521, 215 A.2d 597, 606–607 (1965).

While conceding the "worthwhile" objective of preserving prime agricultural land, the Court also faults the Hopewell Township ordinance as being too restrictive. The means used are considered restrictive because they apply unequally and disproportionately to large and small land owners. The nature of the thing is that it cannot be otherwise, simply because the land is unequally held. There are few places on this globe not already parcelled, and that in unequal proportions. If the limitation is for concededly good reasons and constitutionally permissible, for those reasons, it is inevitable that somebody's ox must limp home.

Here the purpose of the controverted ordinance is to preserve *prime* agricultural land, a vanishing commodity. That that purpose will limit the uses of that kind of land, and do so unequally, is ineluctable. This is not an ordinance designed to save one's happy valley from unwanted strangers; it is a salutary and essential consideration, for the welfare of all, that unique land be preserved to maintain the very stuff of life. The ordinance is presumed constitutional; those who challenge it must bear the burden of proving it clearly and unmistakably unconstitutional. *National Land,*

1. Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, art. I, § 101 *et seq.,* 53 Pa.C.S.A. § 10101 *et seq.*

419 Pa. at 522, 215 A.2d at 607; *Bilbar Construction Co. v. Easttown Board of Adjustment,* 393 Pa. 62, 70, 141 A.2d 851, 855 (1958).  This they have failed to do, and are given solace because this Court believes Hopewell Township premature. I would reverse on the reasoning of Judge Cassimatis in his dissenting opinion in the Court of Common Pleas.